SEALED

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2015 JUN 23  PM 3: 37

DEPUTY CLERK_____  N1

UNITED STATES OF AMERICA

V.

(4)  DAVID SILVA GARCIA A.K.A. ANIMO
(5)  DAVID DE LOS SANTOS
(6)  MELVIN RAY WILLIAMS
     A.K.A. BLACK
(7)  AMBER VASQUEZ
(8)  MIA VASQUEZ
(9)  ISRAEL VASQUEZ
(10) JOSE GUERRERO A.K.A. J.D.
(11) FRANCISCO GALLEGOS, JR.
     A.K.A. PANCHITO, PAN
(12) ROBERTO RAMIREZ
(13) GERARDO REYES
(14) JASON ERIC STOTTS
(15) OCTAVIUS DONNELL WILLIAMS
(16) JAVIER GUERRA, A.K.A. CHOP
(17) TONY RUVALCABA, A.K.A. LIL TONY
(18) EUSEBIO MARTINEZ RAMIREZ, JR.
     A.K.A. SIP
(19) EDUARDO RUVALCABA, A.K.A. LALO
(20) KENNETH JOHNSON, A.K.A KJ
(21) ALEX GONZALES
(22) NOEL ESCAMILLA
(23) ADRIAN MIRAMONTEZ
(24) ROLANDO BENITEZ A.K.A. SAN LUIS
(25) JUAN AYALA
(26) JUAN MANUEL ARELLANO
(27) JOSE AMAYA
(28) FUNAKI FALAHOLA, A.K.A. NOC
(29) MONITEVETI KATOA, A.K.A. VINCE

**SEALED INDICTMENT**

NO. 14-CR-00266-B
**(Supersedes Indictment Returned
July 9, 2014).**

Superseding Indictment Page 1

(30) MAYRA LOPEZ
(31) LUKE LAMIPETI
(32) DAVID LOPEZ
(33) JESSE ALCALA
(34) JUAN ZUNIGA, A.K.A. Z
(35) COREY NELSON
(36) PAUL SALAZAR
(37) DEMARCUS CALHOUN
(38) GEORGE GUERRA
(39) NICHOLAS MAYES
(40) RUDOLPHO MAYES, A.K.A. RUDY
(41) ALBERT JUAREZ
(42) MARCUS DEMON HARDY
(43) RODNEY TILLEY
(44) MOLITONI KATOA, A.K.A. TONY
(45) VILISOLO LAMIPETI
(46) JANELLE ISAACS
(47) ROSAMARIA BLANCO
(48) ROBERTO VASQUEZ, JR.
(49) ERNEST OLIVAREZ

## SUPERSEDING INDICTMENT

The Grand Jury charges:

### Count One
(Conspiracy to Possess with Intent to Distribute a Controlled Substance
21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(i))

Beginning on or about December 1, 2013, the exact date being unknown to the

Grand Jury, and continuing thereafter through and including the date of the superseding

indictment, in the Dallas Division of the Northern District of Texas, and elsewhere,

**DAVID SILVA GARCIA, DAVID DE LOS SANTOS, MELVIN RAY WILLIAMS,**

**ISRAEL VASQUEZ, AMBER VASQUEZ, MIA VASQUEZ, ROBERTO**

**RAMIREZ, FRANCISCO GALLEGOS  JR. A.K.A. PAN, A.K.A. PANCHITO**

defendants herein, did knowingly, intentionally and unlawfully combine, conspire,

confederate, and agree together, with each other and with other persons known and

unknown, to commit certain offenses against the United States, to-wit:  to possess with

the intent to distribute and to distribute one (1) kilogram or more of a mixture or

substance containing a detectable amount of heroin, a Schedule I controlled substance, in

violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(i).

<u>Count Two</u>
Conspiracy to Possess with Intent to Distribute a Controlled Substance
(21 USC §§ 846, 841(a)(1), 841(b)(1)(A)(viii))

Beginning on or about October 1, 2013, the exact date being unknown to the

Grand Jury, and continuing thereafter through and including the date of the superseding

indictment, in the Dallas Division of the Northern District of Texas and elsewhere, **JOSE**

**GUERRERO A.K.A. J.D, ROBERTO RAMIREZ, FRANCISCO GALLEGOS JR.**

**A.K.A. PAN, A.K.A. PANCHITO, GERARDO REYES, DAVID DE LOS SANTOS,**

**MELVIN RAY WILLIAMS A.K.A. BLACK, JASON ERIC STOTTS**, defendants

herein, and others both known and unknown, did knowingly, intentionally and unlawfully

combine, conspire, confederate, and agree together, with each other and with other

persons both known and unknown, to commit certain offenses against the United States,

to-wit: to possess with the intent to distribute and to distribute 500 grams or more of a

mixture or substance containing a detectable amount of methamphetamine, its salts,

isomers, or salts of its isomers, a Schedule II controlled substance, in violation of 21

U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(viii).

<u>Count Three</u>
Conspiracy to Possess with Intent to Distribute a Controlled Substance
(21 USC §§ 846, 841(a)(1), 841(b)(1)(A)(viii))

Beginning on or about November 1, 2012, the exact date being unknown to the

Grand Jury, and continuing thereafter through and including the date of the superseding

indictment, in the Dallas Division of the Northern District of Texas and elsewhere, **JOSE**

**GUERRERO A.K.A. J.D,  JAVIER GUERRA A.K.A. CHOP, TONY**

**RUVALCABA A.K.A. LIL TONY, EUSEBIO MARTINEZ RAMIREZ, JR. A.K.A.**

**SIP, EDUARDO RUVALCABA A.K.A. LALO, KENNETH JOHNSON A.K.A. KJ,**

**ALEX GONZALES, NOEL ESCAMILLA, OCTAVIUS DONNELL WILLIAMS,**

**KENNETH JOHNSON A.K.A. KJ,** defendants herein, and others both known and

unknown, did knowingly, intentionally and unlawfully combine, conspire, confederate,

and agree together, with each other and with other persons both known and unknown, to

commit certain offenses against the United States, to-wit: to possess with the intent to

distribute and to distribute 500 grams or more of a mixture or substance containing a

detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, a

Schedule II controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and

841(b)(1)(A)(viii).

<u>Count Four</u>
Conspiracy to Possess with Intent to Distribute a Controlled Substance
(21 USC §§ 846, 841(a)(1), 841(b)(1)(A)(viii))

Beginning on or about November 1, 2014, the exact date being unknown to the

Grand Jury, and continuing thereafter through and including the date of the superseding

indictment, in the Dallas Division of the Northern District of Texas and elsewhere, **JOSE**

**GUERRERO, A.K.A. J.D., ADRIAN MIRAMONTEZ, JUAN AYALA, JUAN**

**MANUEL ARELLANO, JOSE AMAYA, ROLANDO BENITEZ, A.K.A. SAN**

**LUIS, FUNAKI FALAHOLA A.K.A. NOC, MAYRA LOPEZ,** defendants herein, and

others both known and unknown, did knowingly, intentionally and unlawfully combine,

conspire, confederate, and agree together, with each other and with other persons both

known and unknown, to commit certain offenses against the United States, to-wit: to

possess with the intent to distribute and to distribute 500 grams or more of a mixture or

substance containing a detectable amount of methamphetamine, its salts, isomers, or salts

of its isomers, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846,

841(a)(1) and 841(b)(1)(A)(viii).

<u>Count Five</u>
Conspiracy to Possess with Intent to Distribute a Controlled Substance
(21 USC §§ 846, 841(a)(1), 841(b)(1)(B)(viii))

On or about May 7, 2014, in the Dallas Division of the Northern District of Texas,

and elsewhere, **LUKE LAMIPETI** and **FUNAKI FALAHOLA, A.K.A. NOC,**

defendant herein and others both known and unknown, did knowingly, intentionally and

unlawfully combine, conspire, confederate, and agree together, with each other and with

other persons both known and unknown, to commit certain offenses against the United

States, to-wit: to possess with the intent to distribute and to distribute 50 grams or more

of a mixture or substance containing a detectable amount of methamphetamine, its salts,

isomers, or salts of its isomers, a Schedule II controlled substance, in violation of 21

U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(viii).

<u>Count Six</u>
Conspiracy to Possess with Intent to Distribute a Controlled Substance
(21 USC §§ 846, 841(a)(1), 841(b)(1)(B)(viii))

Beginning on or about October 1, 2011, and continuing through the filing date of the superseding indictment, in the Dallas Division of the Northern District of Texas, **DAVID LOPEZ**, and **JESSE ALCALA,** defendants herein and others both known and unknown, did knowingly, intentionally and unlawfully combine, conspire, confederate, and agree together, with each other and with other persons both known and unknown, to commit certain offenses against the United States, to-wit: to possess with the intent to distribute and to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(viii).

Count Seven
(Conspiracy to Possess with Intent to Distribute a Controlled Substance
21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(ii))

On or about January 1, 2012, and continuing through the filing date of the

superseding indictment, in the Dallas Division of the Northern District of Texas, and

elsewhere, **JUAN ZUNIGA A.K.A. Z, RUDOLPHO MAYES A.K.A. RUDY,**

**ALBERT JUAREZ, COREY NELSON, PAUL SALAZAR, DEMARCUS**

**CALHOUN, MARCUS DEMON HARDY, GEORGE GUERRA, NICHOLAS**

**MAYES, RODNEY TILLEY,** defendants herein, did knowingly, intentionally and

unlawfully combine, conspire, confederate, and agree together, with each other and with

other persons unknown, to commit certain offenses against the United States, to-wit:  to

possess with the intent to distribute five kilograms or more of a mixture or substance

containing a detectable amount of cocaine, a Schedule II controlled substance, in

violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(ii).

Count Eight
(Conspiracy to Possess with Intent to Distribute a Controlled Substance
21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(ii))

On or about June 20, 2013, in the Dallas Division of the Northern District of

Texas, **FUNAKI FALAHOLA, LUKE LAMIPETI, MOLITONI KATOA A.K.A.**

**TONY, VILISOLO LAMIPETI, NOEL ESCAMILLA A.K.A. NOE**, defendants

herein, did knowingly, intentionally and unlawfully combine, conspire, confederate, and

agree together, with each other and with other persons unknown, to commit certain

offenses against the United States, to-wit:  to possess with the intent to distribute five

kilograms or more of a mixture or substance containing a detectable amount of cocaine, a

Schedule II controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and

841(b)(1)(A)(ii).

### Count Nine
(Conspiracy to Possess with Intent to Distribute a Controlled Substance
21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(ii))

Beginning on or about April 18, 2013, and continuing through the filing date of the superseding indictment, in the Dallas Division of the Northern District of Texas, the Northern District of Illinois, the District of Nevada, the District of Arizona, the District of New Jersey, the Northern District of California, the District of Kansas, and elsewhere, **FUNAKI FALAHOLA, MOLITONI KATOA A.K.A. TONY, JANELLE ISAACS, MONITEVETI KATOA, A.K.A. VINCE,** defendants herein, did knowingly, intentionally and unlawfully combine, conspire, confederate, and agree together, with each other and with other persons unknown, to commit certain offenses against the United States, to-wit: to possess with the intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance,

### MANNER AND MEANS

During the conspiracy alleged herein, it was part of the conspiracy that one or more of the defendants and co-conspirators would:

1.  Acquire kilogram amounts of a substance that was represented to be cocaine;

2.  Arrange for the transportation and delivery of kilogram amounts of a substance that was represented to be cocaine through the Dallas/Ft. Worth International Airport and onto commercial airline flights by:

a.  Utilizing a position of employment at the Dallas/Ft. Worth International Airport to bypass security, or

b.  contacting an individual or individuals that they knew had a position of employment at the Dallas/Ft. Worth International Airport in order to get that individual or individuals to help bypass security measures at the Dallas/Ft. Worth International Airport, or

c.  aiding an individual or individuals that they knew in bypassing security measures at the Dallas/Ft. Worth International Airport;

3.  Transport kilogram amounts of a substance represented to be cocaine on commercial airline flights from the Northern District of Texas to various locations throughout the United States and deliver the substance in exchange for payment;

4.  Divide the payment for transportation and delivery of the substance that was represented to be cocaine;

5.  Coordinate the transportation, distribution, and delivery of kilogram amounts of the substance represented to be cocaine with persons both known and unknown to the Grand Jury within the Northern District of Texas and elsewhere;

6.  Utilize vehicles, homes, and communication facilities, including telephones and cellular telephones, to discuss, negotiate, and facilitate the success of the conspiracy;

7. Act as "look outs" or engage in counter-surveillance to bypass security measures at the Dallas/Ft. Worth International Airport;

8. Act as "look-outs" or engage in counter-surveillance to become aware of any police presence.

OVERT ACTS

1. In furtherance of the conspiracy alleged in Count Nine of the Superseding Indictment, **FUNAKI FALAHOLA**, on or about April 18, 2013, informed an undercover officer that he could transport drugs through United Airlines and American Airlines by using contacts in Las Vegas, Los Angeles, San Francisco, and Miami International Airports. **FUNAKI FALAHOLA** informed an officer(s) acting in an undercover capacity (hereafter referred to as undercover officer) that he would also get his cousin, **MOLITONI KATOA**, to assist in this venture:

a. On or about May 10, 2013, **FUNAKI FALAHOLA** introduced **MONITEVETI KATOA a.k.a. VINCE** as his uncle. **MONITEVETI KATOA** told the undercover officer he would fly to the airports where the undercover officer wanted illegal drugs shipped and conduct a security check to make sure the drugs were not detected by law enforcement. After completing the security check, **MONITEVETI KATOA** told the undercover officer he would fly the drugs on his person to their final destination. **MONTIVETI KATOA** said his name would be placed on the

employee flight list as opposed to the standard passenger manifest. **FUNAKI FALAHOLA** informed the undercover officer his cousin and other family members would also be able to help.

b. On or about May 23, 2013, **MOLITONI KATOA** and **FUNAKI FALAHOLA** provided details as to how they could transport illegal drugs via commercial airlines.

c. On or about August 16, 2013, **FUNAKI FALAHOLA** told an undercover officer **MOLITONI KATOA** would be able to bypass Transportation Safety Administration (TSA) Security and transport four kilograms of cocaine to Las Vegas for a fee. The total agreed fee was $9000 in U.S. currency.

d. On or about September 11, 2013, and in furtherance of the conspiracy alleged in Count Nine of the Superseding Indictment, **FUNAKI FALAHOLA** told an undercover officer that he and **MONITEVETI KATOA** would be meeting with **MOLITONI KATOA** shortly after the cocaine was provided but before **MOLITONI KATOA** began his shift at the Dallas/Ft. Worth International Airport. Undercover officers provided **FUNAKI FALAHOLA** a backpack containing four kilograms of a substance that was represented to be cocaine. Subsequently, **FUNAKI FALAHOLA** and **MONITEVETI KATOA** boarded an American Airlines flight to Las Vegas. **FUNAKI FALAHOLA** and **MONITEVETI**

KATOA then delivered the four kilograms of a substance that was represented to be cocaine, in the District of Nevada, to an undercover officer who paid the remaining amount of the agreed upon fee of $9000.

e.  On September 18, 2013, and in furtherance of the conspiracy alleged in Count Nine of the Superseding Indictment, **MONITEVETI KATOA** told an undercover officer that he thought **FUNAKI FALAHOLA** was bragging about taking drugs to Las Vegas, Nevada. **MONITEVETI KATOA** suggested to the undercover officer that he should allow him (**MONTEVETI KATOA**) to transport illegal drugs. **MONITEVETI KATOA** told an undercover officer he had several ways to transport illegal drugs, that he had been flying several times a month to observe how TSA conducted security checks in various cities and that he had been waiting for the opportunity to transport drugs on American Airlines.

2.  On or about September 15, 2014, and in furtherance of the conspiracy alleged in Count Nine of the Superseding Indictment, **MONITEVETI KATOA** agreed to transport three kilograms of a substance that was represented to be cocaine from Dallas/Ft. Worth International Airport, via commercial airline, to a destination in Newark, New Jersey:

a.  On September 22, 2014, an undercover officer provided **MONITEVETI KATOA** with three kilograms of a substance that was represented to be cocaine. **MONITEVETI KATOA** took the three

kilograms of a substance he believed to be cocaine and transported them

via commercial airline from the Dallas/Ft. Worth International Airport

to Newark, New Jersey, where he met an undercover officer, in the

District of New Jersey, at a location away from the airport.

b. **MONITEVETI KATOA** was paid $5500 in U.S. currency for the

transportation services. **MONITEVETI KATOA** told the undercover

officer he had been delayed for an hour before boarding and that he was

asked to check his bag. **MONITEVETI KATOA** told the undercover

officer he was nervous but knew it was a routine request.

**MONITEVETI KATOA** then called **JANELLE ISAACS** and asked

her to check on return flights for him. During the conversation, the

undercover officer overheard **JANELLE ISAACS** ask **MONITEVETI**

**KATOA** if everything had gone "OK." In response to a question from

the undercover officer, **MONITVETI KATOA** stated **"TONI"** had

helped him get the drugs on the plane and that his fee was $2000 in U.S.

currency.

3. On or about October 3, 2014, and in furtherance of the conspiracy alleged

in Count Nine of the Superseding Indictment, **FUNAKI FALAHOLA** asked

an undercover officer to contact him any time he wanted drugs smuggled from

the Dallas/Ft. Worth International Airport via commercial airline to any other

city, that he did not know **MONITVETI KATOA** had been smuggling drugs
independently, and that he wanted to be included in any further transactions.

    a.  On October 24, 2014, undercover officers met with **FUNAKI
FALAHOLA** and provided a backpack that contained three kilograms
of a substance that was represented to be cocaine. **FUNAKI
FALAHOLA** said he would give the backpack to **MOLITONI
KATOA** who would be able to bypass the security checkpoints at the
Dallas/Ft. Worth  International Airport due to his employment.
**MOLITONI KATOA** would then deliver the backpack with the three
kilograms to **MONITEVETI KATOA** who would transport them to
Phoenix, Arizona.

    b.  **FUNAKI FALAHOLA** received $3000 in U.S. currency from an
undercover officer for the transportation of the three kilograms of a
substance that was represented to be cocaine. **FUNAKI FALAHOLA**
told an undercover officer that **MONITEVETI KATOA** would be
taking a 3:00 p.m. or 7:00 p.m. flight depending upon seat availability.

    c.  On October 24, 2014, **MONITEVETI KATOA** delivered the
three kilograms that were represented to be cocaine to an undercover
officer in Tempe Arizona, which is in the District of Arizona, and was
paid $3000 in U.S. currency.

4. On November 6, 2014, and in furtherance of the conspiracy alleged in Count Nine of the superseding indictment, **MONITEVETI KATOA** told an undercover officer he was ready to transport three kilograms of a substance that was represented to be cocaine to Chicago, Illinois from the Dallas/Ft. Worth International Airport via commercial Airline.

    a. **MONITEVETI KATOA** told an undercover officer that an associate and **MOLITONI KATOA** were available to smuggle the backpack containing the three kilograms inside the secure areas of the Dallas/Ft. Worth International Airport, and described how the three kilograms would be smuggled in and returned to him. **MONTIVETI KATOA** said he had a girlfriend, his wife **(JANELLE ISAACS), MONITONI KATOA**, and an unidentified associate, assisting him in transporting the substance represented to be cocaine.

    b. Upon his arrival in Chicago, Illinois, which is located in the Northern District of Illinois, **MONITEVETI KATOA** met with an undercover officer and turned over the three kilograms of the substance that was represented to be cocaine.

    c. MONITEVETI KATOA was paid $2000 when he picked up the three kilograms and $4300 when he delivered the three kilograms.

5. On December 8, 2014, and in furtherance of the conspiracy alleged in Count Nine of the Superseding Indictment, **MONITEVETI KATOA** met with

an undercover officer to finalize plans for the delivery of three kilograms of a substance that was represented to be cocaine to Wichita, Kansas.

    a.  On December 8, 2014, **MONITEVETI KATOA** told an undercover officer there were only four flights departing the Dallas/Ft. Worth International Airport to Wichita, Kansas. **MONITEVETI KATOA** then contacted **JANELLE ISAACS** and placed her on speaker phone. **JANELLE ISAACS** informed **MONITEVETI KATOA** that the flight would cost about $500 and **MONITEVETI KATOA** told her to book the flight and **JANELLE ISAACS** agreed to do so. **MONITEVETI KATOA** told the undercover officer he would be using **JANELLE ISAACS, MONITONI KATOA,** and either his girlfriend or another unknown associate to smuggle the backpack into the airport. The undercover officer then provided **MONITEVETI KATOA** three kilograms of a substance that was represented to be cocaine and paid him $2000.

    b.  On or about December 8, 2014, **JANELLE ISAACS** left her work area at the Dallas/Ft. Worth International Airport with a backpack and met with **MONITEVETI KATOA**.

    c.  On December 9, 2014, **MONITEVETI KATOA** met with an undercover officer in Wichita, Kansas, in the District of Kansas, and delivered the three kilograms of the substance that was represented to

be cocaine **MONITEVETI KATOA** was paid $4300 by the undercover officer after the delivery.

6. On February 2, 2015, and in furtherance of the conspiracy alleged in Count Nine of the Superseding Indictment, an undercover officer met with **MONTIVETI KATOA** and gave **MONITEVETI KATOA** a backpack containing three kilograms of a substance that was represented to be cocaine after **MONTEVETI KATOA** agreed to transport the three kilograms via commercial airline from the Dallas/Ft. Worth International Airport to Wichita, Kansas.

    a.  **MONITEVETI KATOA** told the undercover officer he would be using another associate instead of **MOLITONI KATOA** and was provided a backpack containing three kilograms of a substance that was represented to be cocaine.

    b.  On February 3, 2015, **MONITEVETI KATOA** arrived at a hotel located in the District of Kansas, met with an undercover officer, and delivered the three kilograms of a substance that was represented to be cocaine.

    c.  **MONITEVETI KATOA** received payment of $4300 for smuggling the three kilograms of a substance that was represented to be cocaine.

7. On or about May 24, 2015, and in furtherance of the conspiracy alleged in Count Nine of the Superseding Indictment, **MONITEVETI KATOA** and

**MOLITONI KATOA** bypassed security at the Dallas/Ft. Worth International Airport.  After bypassing security, **MONITEVETI KATOA** boarded a commercial airline and transported three kilograms of a substance that was represented to be cocaine to San Francisco, California, which is located in the Northern District of California.  **MONITEVETI KATOA** then delivered the three kilograms to an undercover officer in exchange for payment.

All in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(ii).

Count Ten
Conspiracy to Launder Monetary Instruments
(Violation of 18 U.S.C. § 1956(h))

On or about August 1, 2013, in the Dallas Division of the Northern District of

Texas, and elsewhere, the defendants, **JOSE GUERRERO** and **ROSAMARIA**

**BLANCO,** did knowingly combine, conspire, confederate, and agree with each other to

knowingly conduct and attempt to conduct financial transactions affecting interstate

commerce, that is,

    (1)    withdraw $17,040.00 in U.S. currency from a safe deposit box located at

              JPMorgan Chase Bank;

    (2)    deposited $17,040.00 in the form of a check payable to **ROSAMARIA**

              **BLANCO** into an account in that name at JP Morgan Chase;

involving the proceeds of specified unlawful activity, that is, conspiracy to distribute and

possess with intent to distribute a controlled substance, in violation of 21, U.S.C. § 846,

knowing that the transactions were designed in whole or in part to conceal and disguise

the nature, location, source, ownership, and control of the proceeds of the specified

unlawful activity, and that while conducting and attempting to conduct such financial

transactions, knew that the property involved in the transactions represented the proceeds

of some form of unlawful activity.

In violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h).

Count Eleven
Laundering of Monetary Instruments
(Violation of 18 U.S.C. § 1956(a)(3)(B))

On or about April 21, 2015, in the Dallas Division of the Northern District of Texas, and elsewhere, the defendant, **JOSE AMAYA**, with the intent to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct a financial transaction affecting interstate commerce, that is, the deposit of a check in the amount of $11,100.00 made payable to GCJA, LLC into an account at Capital One Bank in the name of GCJA, LLC, involving property represented by a law enforcement officer to be proceeds of specified unlawful activity, that is conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21, U.S.C. § 846.

In violation of 18 U.S.C. §§ 1956(a)(3)(B).

Count Twelve
Laundering of Monetary Instruments
(Violation of 18 U.S.C. § 1956(a)(3)(B))

On or about April 30, 2015, in the Dallas Division of the Northern District of

Texas, and elsewhere, the defendant, **JOSE AMAYA**, with the intent to conceal or

disguise the nature, location, source, ownership, or control of property believed to be the

proceeds of specified unlawful activity, did knowingly conduct a financial transaction

affecting interstate commerce, that is, the Defendant deposited a check in the amount of

$8,900.00 payable to GCJA, LLC, into an account at Capital One Bank in the name of

GCJA, LLC, involving property represented by a law enforcement officer to be proceeds

of specified unlawful activity, that is conspiracy to distribute and possess with intent to

distribute controlled substances in violation of 21, U.S.C. § 846.

In violation of 18 U.S.C. §§ 1956(a)(3)(B).

<u>Count Thirteen</u>
Laundering of Monetary Instruments
(Violation of 18 U.S.C. § 1956(a)(3)(B))

On or about December 20, 2014, in the Dallas Division of the Northern District of Texas, and elsewhere, the defendant, **ADRIAN MIRAMONTEZ**, with the intent to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct a financial transaction affecting interstate commerce, that is, the deposit of Bank of America check #1029 for $9,500.00 made payable to **ADRIAN MIRAMONTEZ** into an account at View Point Bank in the name of **ADRIAN MIRAMONTEZ**, involving property represented by a law enforcement officer to be proceeds of specified unlawful activity, that is conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21, U.S.C. § 846.

In violation of 18 U.S.C. §§ 1956(a)(3)(B).

Count Fourteen
Laundering of Monetary Instruments
(Violation of 18 U.S.C. § 1956(a)(1)(A)(i))

On or about February 22, 2013, in the Dallas Division of the Northern District of Texas, the defendant, **ERNEST OLIVAREZ**, did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, that is, the delivery and transfer of $13,000.00 in U.S. currency to **JOSE GUERRERO**, involving the proceeds of specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21, U.S.C. § 846, with the intent to promote the carrying on of the specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21, U.S.C. § 846, and that while conducting and attempting to conduct the financial transaction, knew that the property involved in the transaction represented the proceeds of some form of unlawful activity.

In violation of 18 U.S.C. § 1956(a)(1)(A)(i).

Count Fifteen
Conspiracy to Launder Monetary Instruments
(Violation of 18 U.S.C. § 1956(h))

From sometime in November 2013 and continuously thereafter through the end of

November 2013, in the Dallas Division of the Northern District of Texas, and elsewhere,

the defendants, **DAVID DE LOS SANTOS** and **ISRAEL VASQUEZ**, did knowingly

combine, conspire, confederate, and agree with each other and others known and

unknown to the Grand Jury to knowingly transport, transmit and transfer and attempt to

transport, transmit and transfer a monetary instrument or funds from a place in the United

States to a place outside the United States, that is,

(1)   Transfer $900.00 by wire through MoneyGram on November 23, 2013 to a

beneficiary/receiver listed as Media Vasquez Leon in the Republic of

Mexico;

(2)   Transfer $1,800.00 by wire through MoneyGram on November 24, 2013 to

a beneficiary/receiver listed as Jaime Rios Marin in the Republic of

Mexico; and

(3)   Transfer $1,800.00 by wire through MoneyGram on November 24, 2013 to

a beneficiary/receiver listed as Elena Guizar Barajas in the Republic of

Mexico,

with the intent to promote the carrying on of specified unlawful activity, that is,

conspiracy to distribute and possess with intent to distribute a controlled substance, in

violation of 21 U.S.C. § 846.

In violation of 18 U.S.C. §§ 1956(a)(2)(A) and 1956(h).

Count Sixteen
Conspiracy to Launder Monetary Instruments
(Violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (a)(1)(B)(i), (h); (2))

Beginning on or about January 1, 2011, and continuing through the filing date of the Superseding Indictment, in the Northern District of Texas, and elsewhere, the defendants **ISRAEL VASQUEZ** and **AMBER VASQUEZ** did knowingly conspire and agree with each other, and other persons, known and unknown to the Grand Jury, to conduct financial transactions involving proceeds of some form of unlawful activity affecting interstate and foreign commerce, which in fact involved the proceeds from the unlawful distribution of a controlled substance in violation of 21 U.S.C. § 841(a) of the Controlled Substances Act:

a.  with the intent to promote the carrying on of said specified unlawful activity, in violation of Title 18 United States Code, Section 1956(a)(1)(A)(i) and

b.  knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

In violation of Title 18 United States Code, Section 1956(h) and Section (2).

<u>Count Seventeen</u>
False Statement in Application for Passport
(18 U.S.C. § 1542)

On or about the 16th day of December, 2013, in the Northern District of Texas, the defendant **ROBERTO VASQUEZ, JR.,** willfully and knowingly made a false statement in an application for a passport with intent to induce and secure for the use of another, namely Israel Vasquez, the issuance of a passport under the authority of the United States, contrary to the laws regulating the issuance of such passports and the rules prescribed pursuant to such laws, in that in such application the defendant claimed that he was applying for a passport for Roberto Vasquez, Jr. when in truth and in fact he was going to allow the passport to be used by another individual identified as Israel Vasquez, which statement he knew to be false.

In violation of Title 18, United States Code, Section 1542.

Forfeiture Notice
(21 U.S.C. § 853(a); 18 U.S.C. § 982(a)(1))

Upon conviction for any of the offenses alleged in Counts One, Two, Three, Four,

Five, Six, Seven, and Eight and pursuant to 21 U.S.C. § 853(a), the defendants, **DAVID**

**SILVA GARCIA A.K.A. ANIMO; DAVID DE LOS SANTOS;MELVIN RAY**

**WILLIAMS A.K.A. BLACK; AMBER VASQUEZ; MIA VASQUEZ; ISRAEL**

**VASQUEZ; JOSE GUERRERO A.K.A. J.D.; FRANCISCO GALLEGOS, JR.**

**A.K.A. PANCHITO,  A.K.A. PAN; ROBERTO RAMIREZ; GERARDO REYES;**

**JASON ERIC STOTTS; OCTAVIUS WILLIAMS; JAVIER GUERRA, A.K.A.**

**CHOP; TONY RUVALCABA, A.K.A. LIL TONY; EUSEBIO MARTINEZ**

**RAMIREZ, JR. A.K.A. SIP; EDUARDO RUVALCABA, A.K.A. LALO;**

**KENNETH JOHNSON, A.K.A K.J.; ALEX GONZALES; NOEL ESCAMILLA;**

**ADRIAN MIRAMONTEZ; ROLANDO BENITEZ A.K.A. SAN LUIS; JUAN**

**AYALA; JUAN MANUEL ARELLANO; JOSE AMAYA; FUNAKI FALAHOLA,**

**A.K.A. NOC; MONITEVETI KATOA, A.K.A. VINCE; MAYRA LOPEZ; LUKE**

**LAMIPETI; DAVID LOPEZ; JESSE ALCALA; JUAN ZUNIGA, A.K.A. Z;**

**COREY NELSON; PAUL SALAZAR; DEMARCUS CALHOUN; GEORGE**

**GUERRA; NICHOLAS MAYES; RUDOLPHO MAYES, A.K.A. RUDY; ALBERT**

**JUAREZ; MARCUS DEMON HARDY; RODNEY TILLEY; MOLITONI**

**KATOA, A.K.A. TONY; VILISOLO LAMIPETI; JANELLE ISAACS;**

**ROSAMARIA BLANCO; ROBERTO VASQUEZ, JR.; ERNEST OLIVAREZ** shall

forfeit to the United States of America any property constituting or derived from

Superseding Indictment Page 31

proceeds obtained, directly or indirectly, as a result of the respective offense and any

property used, or intended to be used, in any manner or part, to commit, or to facilitate

the commission of, the respective offense.

Upon conviction for any of the offenses alleged in Counts, Ten, Eleven, Twelve,

Thirteen, Fourteen, Fifteen, and Sixteen and pursuant to 18 U.S.C. § 982(a)(1), the

defendants, **JOSE GUERRERO and ROSAMARIA BLANCO, JOSE AMAYA,**

**ADRIAN MIRAMONTEZ, ERNEST OLIVAREZ, DAVID DE LOS SANTOS,**

**AMBER VASQUEZ, and ISRAEL VASQUEZ**, shall forfeit to the United States of

America any property involved in, or traceable to property involved in, the respective

offense.

A TRUE BILL

FOREPERSON

JOHN R. PARKER
ACTING UNITED STATES ATTORNEY

George Leal
Assistant United States Attorney
Texas State Bar No. 00794150
1100 Commerce St., Suite 300
Dallas, Texas 75242

John Kull
Assistant U.S. Attorney
Texas Bar No. 00794150
1100 Commerce St., Suite 300
Dallas, Texas 75242

John J. de la Garza III
Assistant U.S. Attorney
Texas Bar No. 00796455
1100 Commerce Street, Suite 300
Dallas, Texas 75242

Superseding Indictment Page 32

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

DAVID SILVA GARCIA (4)
A.K.A. "ANIMO"
DAVID DE LOS SANTOS  (5)
MELVIN RAY WILLIAMS (6)
A.K.A. "BLACK"
AMBER VASQUEZ (7)
MIA VASQUEZ    (8)
ISRAEL VASQUEZ (9)
JOSE GUERRERO (10)
A.K.A. "J.D."
FRANCISCO GALLEGOS, JR. (11)
A.K.A." PANCHITO", "PAN"
ROBERTO RAMIREZ  (12)
GERARDO REYES  (13)
JASON ERIC STOTTS  (14)
OCTAVIUS DONNELL WILLIAMS  (15)
JAVIER GUERRA (16)
A.K.A. "CHOP"
TONY RUVALCABA (17)
A.K.A. "LIL TONY"
EUSEBIO MARTINEZ RAMIREZ, JR. (18)
A.K.A. "SIP"
EDUARDO RUVALCABA (19)
A.K.A." LALO"
KENNETH JOHNSON (20)
A.K.A " KJ"
ALEX GONZALES  (21)
NOEL ESCAMILLA  (22)
ADRIAN MIRAMONTEZ  (23)
ROLANDO BENITEZ (24)
A.K.A. "SAN LUIS"
JUAN AYALA  (25)
JUAN MANUEL ARELLANO  (26)
JOSE AMAYA  (27)
FUNAKI FALAHOLA (28)
A.K.A. "NOC"

MONITEVETI KATOA (29)
A.K.A. "VINCE"
MAYRA LOPEZ  (30)
LUKE LAMIPETI (31)
DAVID LOPEZ (32)
JESSE ALCALA  (33)
JUAN ZUNIGA (34)
A.K.A. " Z"
COREY NELSON  (35)
PAUL SALAZAR  (36)
DEMARCUS CALHOUN  (37)
GEORGE GUERRA  (38)
NICHOLAS MAYES  (39)
RUDOLPHO MAYES (40)
A.K.A. "RUDY"
ALBERT JUAREZ  (41)
MARCUS DEMON HARDY(42)
RODNEY TILLEY (43)
MOLITONI KATOA (44)
A.K.A. "TONY"
VILISOLO LAMIPETI  (45)
JANELLE ISAACS  (46)
ROSAMARIE BLANCO  (47)
ROBERTO VASQUEZ, JR.   (48)
ERNEST OLIVAREZ  (49)

---

## **SEALED** SUPERSEDING INDICTMENT

21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(i)
Conspiracy to Possess with Intent to Distribute a Controlled Substance

21 U.S.C. §§  846, 841(a)(1), 841(b)(1)(A)(viii)
Possession of a Controlled Substance with Intent to Distribute

21 U.S.C. §§ 846, 841(a)(1),841(b)(1)(B)(viii)
Conspiracy to Possess with Intent to Distribute a Controlled Substance

21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(ii)
Conspiracy to Possess with Intent to Distribute a Controlled Substance

18 U.S.C. § 1956(h)
Conspiracy to Launder Monetary Instruments

18 U.S.C. § 1956(a)(3)(B)
Laundering Monetary Instruments

18 U.S.C. § 1956(a)(1)(A)(i)
Laundering of Monetary Instruments

18 U.S.C. §§ 1956(a)(1)(A)(i), (a)(1)(B)(i), (h); 2
Conspiracy to Launder Monetary Instruments

18 U.S.C. § 1542
False Statement in Application for Passport

21 U.S.C. § 853(a); 18 U.S.C. § 982(a)(1)
Forfeiture Notice

17 Counts

A true bill rendered

--------------------------------------------------------------------------------
*Roger Meister*

DALLAS                                                    FOREPERSON

Filed in open court this _23rd_ day of June, 2015

--------------------------------------------------------------------------------
                                                              Clerk

**\*\*Arrest Warrants to be issued for: DAVID SLIVA GARCIA, DAVID DE LOS SANTOS, MELVIN RAY WILLIAMS, AMBER VASQUEZ, MIA VASQUEZ, ISRAEL VASQUEZ, JOSE GUERRERO, FRANCISCO GALLEGOS, JR., ROBERTO RAMIREZ, GERARDO REYES, JASON ERIC STOTTS, OCTAVIUS DONNELL WILLIAMS, JAVIER GUERRA, TONY RUVALCABA, EUSEBIO MARTINEZ RAMIREZ, JR., EDUARDO RUVALCABA, KENNETH JOHNSON, ALEX GONZALES, NOEL ESCAMILLA, ADRIAN MIRAMONTEZ, ROLANDO BENITEZ, JUAN AYALA, JUAN MANUEL ARELLANO, JOSE AMAYA, FUNAKI FALAHOLA, MONITEVETI KATOA, MAYRA LOPEZ, LUKE LAMIPETI, DAVID LOPEZ, JESSE ALCALA, JUAN ZUNIGA, COREY NELSON, PAUL SALAZAR, DEMARCUS CALHOUN, GEORGE GUERRA, NICHOLAS MAYES, RUDOLPHO MAYES, ALBERT JUAREZ, MARCUSE DEMON HARDY, RODNEY TILLEY, MOLITONI KATOA, VILISOLO LAMIPETI, JANELLE ISAACS, ROSAMARIA BLANCO, ROBERTO SANCHEZ and ERNEST OLIVAREZ**

--------------------------------------------------------------------------------

UNITED STATES DISTRICT/MAGISTRATE JUDGE

Criminal Case Pending:  3:14-CR-266-B